**In re JOHNSON COUNTY GAS COMPANY, INC. A Kentucky Corporation, Debtor.**

**Bankruptcy No. 83–00002.**

United States Bankruptcy Court,
E.D. Kentucky,
Pikeville.

June 13, 1983.

W. Thomas Bunch, Lexington, Ky., for petitioning creditors.

S.H. Johnson, Paintsville, Ky., for debtor.

Thomas E. Morgan, J.L. Fullin, Columbus, Ohio, for Columbia Gas of Kentucky, Inc.

## MEMORANDUM OPINION

JOE LEE, Bankruptcy Judge.

This case is before the court on an involuntary petition for relief under chapter 7 of the Bankruptcy Code filed against the debtor by three of its creditors. The major petitioning creditor, Columbia Gas of Kentucky, Inc., alleges it is owed an unsecured debt in the amount of $222,587.62, which amount is increasing because it is continuing to supply gas to the debtor. The other two petitioning creditors, Health Consultants, Inc. and Reams Control, Inc., are owed $826.95 and $2,855.20 respectively. The petition alleges the debtor is not generally paying its debts as such debts become due.

The debtor operates a natural gas distribution business at Van Lear in Johnson County, Kentucky that supplies natural gas through underground lines to approximately 800 customers. The company was acquired by its present stockholders, Danny Preston and his wife, Betty R. Preston, in 1980. The company is subject to regulation by the Public Service Commission of Kentucky.

The petitioning creditors also seek the appointment of an interim trustee to take possession of the property of the estate and to operate the business of the debtor. They allege irregularities in the operation of the business as documented in investigative reports of the Public Service Commission of Kentucky and the Kentucky Attorney General's office.

The debtor has asserted a number of defenses to the petition including the allegation that this court is without constitutional power and authority to liquidate the debtor under the United States Supreme Court's holding in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* —— U.S. ——, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). The debtor has also filed a counterclaim against Columbia Gas Company, Inc. for damages in the amount of $500,000 and punitive damages in the amount of $5,000,000, alleging that the petition is filed in bad faith by Columbia in an attempt to gain control of the debtor at the expense of the debtor's customers or other creditors or to impose a surcharge on customers of the debtor without the approval of the Kentucky Public Service Commission.

Following the taking of depositions on discovery of Danny Preston, the president and managing officer of the debtor, and the debtor's accountant, the petitioning creditors have moved for summary judgment on the allegation that the debtor is generally not paying its debts as such debts become due. The petitioning creditors assert that Preston's testimony reveals that the debtor owes its certified public accountants, its attorneys, the Small Business Administration, the Department of Local Government (a debt in excess of 1.3 million dollars), Kentucky West Virginia Gas Company and Columbia Gas Company, and is in arrears in payments to all of its creditors except the Small Business Administration.

For the reasons hereinafter stated, the court is of the opinion the involuntary petition under chapter 7 of the Bankruptcy Code for an order of relief against the debtor, and the debtor's counterclaim against Columbia Gas of Kentucky, Inc., should be dismissed for lack of jurisdiction.

CONCLUSIONS OF LAW:

### Part I

Section 201 of the Bankruptcy Reform Act of 1978 adds to title 28, United States Code, a new Chapter 6, entitled "Bankruptcy Courts." Section 151 of title 28, appearing in new Chapter 6, provides as follows with respect to the creation and composition of bankruptcy courts.

§ 151. Creation and composition of bankruptcy courts

(a) There shall be in each judicial district, as an adjunct of the district court for such district, a bankruptcy court which shall be a court of record known as the United States Bankruptcy Court for the district.

(b) *Each bankruptcy court shall consist of the bankruptcy judge or judges for the district in regular active service.* Justices or judges designated and assigned shall be competent to sit as judges of the bankruptcy court. (emphasis added).

Pursuant to the first sentence of subsection (b) of section 151 above quoted, a bankruptcy court is composed only of the bankruptcy judge or judges in active service in the district. The second sentence of subsection (b) tracks with amendments to sections 291, 292 and 294 of title 28, United States Code, made by sections 202, 203 and 206 of the Bankruptcy Reform Act of 1978. The latter amendments, which do not take effect until April 1, 1984, will permit Article III judges to sit by designation and assignment as judges of the bankruptcy court.

It is obvious from the foregoing amendments to title 28 of the United States Code that the term "bankruptcy court" or "court" as used in Titles I and II of the Bankruptcy Reform Act of 1978 does not include a judge of the district court, except after 1984, when such judge has been designated and assigned to sit as a judge of the bankruptcy court.

■ The question arises as to whether the "courts of bankruptcy," which have been continued in existence during the transition period for the purposes of the Bankruptcy Reform Act of 1978 and the amendments made thereby, likewise consist only of the bankruptcy judge or judges in active service in the district.

The court has concluded that the transition courts of bankruptcy consist of both the Article III judges of the courts of bankruptcy and the non-Article III bankruptcy judges in active service in the district, but it is only the bankruptcy judges who are authorized to exercise the judicial powers of the courts of bankruptcy. The Article III judges of the courts of bankruptcy have been retained as titular judges only for the purpose of vesting in them the power to appoint, remove or temporarily assign bankruptcy judges during the transition period, powers which pass to the President, the Judicial Council, or to the chief judge of the circuit at the end of the transition period. Article III judges of the courts of bankruptcy are not authorized to exercise any of the judicial powers of the transition courts of bankruptcy, as will be hereinafter demonstrated.

Section 404(a) of the Bankruptcy Reform Act of 1978 continues in existence during the transition period (commencing on October 1, 1979, and ending on March 31, 1984) the courts of bankruptcy existing on September 30, 1979, as defined under section 1(10) of the Bankruptcy Act and created under section 2a of the Bankruptcy Act. Such courts are continued as the courts of bankruptcy for the purposes of the Bankruptcy Reform Act of 1978 and the amendments made by that Act. Each of the courts of bankruptcy so continued is constituted as a separate department of the district court.

According to legislative history, the purpose of section 404 of the Bankruptcy Reform Act of 1978 is to continue the present bankruptcy court system during the transition period, with changes that are necessary to make the transition system enough like the proposed new court system so that the

measurement process of caseload and judicial time requirements will be accurate.[1]

One change that was necessary to make the transition bankruptcy court like the proposed new court was repeal or recision of statutory provisions that authorized the Article III judge of the court of bankruptcy to function generally as a judge of the court of bankruptcy. Therefore, Congress did not continue in existence during the transition period the provisions of sections 1(9) and 1(20) of the Bankruptcy Act defining the courts of bankruptcy to include the judge of the court of bankruptcy. These provisions, which were as follows, were repealed October 1, 1979.

(9) "Court" shall mean the judge or the referee of the court of bankruptcy in which the proceedings are pending;

(20) "Judge" shall mean a judge of a court of bankruptcy, not including the referee.

The courts of bankruptcy as continued in existence by Congress during the transition period are no longer defined to include generally the judge of the court of bankruptcy. Consequently, the terms "bankruptcy court" or "court" as used in the Bankruptcy Code do not include the Article III judge of the court of bankruptcy during or after the transition period.

Section 404(b) of the Bankruptcy Reform Act of 1978 continues referees in bankruptcy in office during the transition period, confers upon them the title United States bankruptcy judge, and provides that they shall serve in the courts of bankruptcy in the manner prescribed by Title IV of the Bankruptcy Act of 1978, in other words, as the judges of the transition bankruptcy courts.

Significantly, section 1(10) of the Bankruptcy Act, 11 U.S.C. § 1(10), which defines courts of bankruptcy, does not say that courts of bankruptcy are included within the United States district courts. Rather, it says just the opposite. We quote:

(10) "courts of bankruptcy" shall include the United States district courts
. . . .

As a matter of statutory construction the word "include" is an encompassing rather than a limiting term.[2] Consequently, the courts of bankruptcy exist outside rather than within the district courts. This explains why specific enabling legislation was necessary to extend the reach of authority of district judges in order for them to function as judges of the courts of bankruptcy.

Section 132 of title 28 of the United States Code, providing for the creation and composition of the district courts, does not define such courts to include the courts of bankruptcy or the judge or judges of the court of bankruptcy for the district. Subsection (c) of section 132, which authorizes a district judge to exercise the judicial power of a district court, does not authorize such judge to exercise the judicial power of a court of bankruptcy or bankruptcy court. If such power exists, it does not flow from any provision of title 28 of the United States Code. The authority of a judge of the court of bankruptcy to exercise the judicial power of a court of bankruptcy has heretofore been contained in enabling legislation incorporated in the Bankruptcy Act. As hereinabove indicated, this enabling legislation has been repealed.

Each court of bankruptcy in each judicial district, existing as it does outside the district court, has been continued in existence during the transition period as a *separate* department of the district court. According to Webster's dictionary the word *separate* means "set or kept apart," "detached," "existing by itself," "autonomous."[3] Consequently, the courts of bankruptcy have been continued in existence not as departments within, but rather as separate autonomous departments outside the district courts. The courts of bankruptcy are in fact constituted as courts of record separate from the district courts during the transi-

---

1. H.R.Rep. No. 595, 95th Cong., 1st Sess., 459 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787.

2. 11 U.S.C. § 102(3).

3. Webster's Seventh New Collegiate Dictionary 790 (1963).

tion period, in the same manner as the bankruptcy courts are established as separate courts of record after the transition period.[4]

The first sentence of section 151(b) of title 28, United States Code, defining the bankruptcy court to include only the bankruptcy judge or judges in active service in the district, is made applicable during the transition period by section 404(e) of the Bankruptcy Reform Act of 1978. Section 404(e) confers upon transition bankruptcy judges "the same rights and powers as a United States bankruptcy court established under section 201" of the Bankruptcy Reform Act of 1978 with respect to the appointment of a clerk of the bankruptcy court and necessary other employees as authorized by section 233 of such Act. During the transition period, the clerk of the court of bankruptcy has the same powers, functions and duties as a clerk of the United States bankruptcy court established under section 201 of the Bankruptcy Reform Act of 1978.[5] It is clear from the foregoing provisions that the court of bankruptcy is authorized to function as a court of record separate from the district court during the transition period.

The conclusion that only bankruptcy judges may exercise the judicial powers of the courts of bankruptcy during the transition period is reinforced by the language of section 405(a) of the Bankruptcy Reform Act of 1978 mandating that all cases commenced during the transition period shall be referred to the United States bankruptcy judges rather than to judges of the courts of bankruptcy and providing that all proceedings in such cases, except a proceeding to enjoin a court or to punish a criminal contempt, shall be before the United States bankruptcy judges.

Under sections 301–303 of the Bankruptcy Code, 11 U.S.C. §§ 301–303, a bankruptcy case is commenced by filing the petition with the clerk of the court of bankruptcy/bankruptcy court rather than the clerk of the district court as under former law. Under section 1473 of title 28, United States Code, a proceeding arising in or related to a case under title 11 is commenced by filing a complaint with the court of bankruptcy/bankruptcy court. The clerk of the court of bankruptcy is precluded by section 405(a) from referring a case to the judge of the court of bankruptcy. The judge of the court of bankruptcy is precluded from sitting as a trial judge.

In the aftermath of the decision of the Supreme Court in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co., supra,* the search for some vestige of authority in Article III judges of the courts of bankruptcy over bankruptcy cases and proceedings has caused attention to be focused on section 405(a)(2) of the Bankruptcy Reform Act of 1978, which provides as follows:

(2) Except as provided in subsection (c) of this section [which permits appeals to be routed to a panel of three bankruptcy judges or directly to the court of appeals for the circuit, as well as to the district court], any proceeding in a court of bankruptcy in a case under title 11 of the United States Code that is not before the United States bankruptcy judge shall be before *the judge of the court of bankruptcy* for the district in which such case is pending.

Obviously, this provision was not drafted with the prescient notion that the jurisdictional underpinnings for the powers exercisable by United States bankruptcy judges under paragraph (1) of section 405(a) might be declared unconstitutional. Rather, it was so drafted to accommodate the fact that in paragraph (1) of such section Congress withholds from non-Article III transition bankruptcy judges the power to enjoin another court or to punish a criminal contempt. Consequently, the straightforward meaning of section 405(a)(2) is that a proceeding to enjoin another court or to punish

---

**4.** *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* —— U.S. ——, 102 S.Ct. 2858, 2863–64, 73 L.Ed.2d 598, 605–06 (1982).

**5.** Bankruptcy Reform Act of 1978, Sec. 404(e), 92 Stat. 2684.

a criminal contempt shall be before the judge of the court of bankruptcy.

The original version of paragraph (2) as it appeared in H.R. 6 was as follows:

(2) Any proceeding in a court of bankruptcy in a case under title 11 that is not before the bankruptcy judge shall be before the United States district court for the district in which such case is pending.[6]

Under this language it might have made sense to keep 28 U.S.C. § 1334 in effect during the transition period, in order that the district court might entertain jurisdiction of the two types of proceedings that could not be heard by non-Article III transition bankruptcy judges, i.e., proceedings to enjoin another court or to punish a criminal contempt. It appears that it may have been the intention of the draftsmen to keep 28 U.S.C. § 1334 in effect during the transition period for this very limited purpose in order that the district court might assist the court of bankruptcy by entertaining these two types of proceedings, in the event such proceedings were necessary to enforce the orders of the court of bankruptcy.

The change in the language of section 405(a)(2) to its present form to specify that proceedings to enjoin another court or to punish a criminal contempt "shall be before the judge of the court of bankruptcy" rather than the district court is unfortunate because 28 U.S.C. § 1481, as ultimately modified to accommodate the fact that the bankruptcy court is created as a non-Article III court, withholds from the bankruptcy court the power to enjoin another court or to punish a criminal contempt. Section 405(b) of the Bankruptcy Reform Act of 1978 makes 28 U.S.C. § 1481 applicable during transition. Consequently, during the transition period, courts of bankruptcy do not have power to enjoin another court or

to punish a criminal contempt. An Article III "judge of the court of bankruptcy" cannot exercise powers withheld from the court of bankruptcy by Congress.[7] Therefore it would be an exercise in futility to commence a proceeding to enjoin another court or to punish a criminal contempt in the court of bankruptcy. It necessarily follows that such proceedings should be commenced in some court other than the court of bankruptcy/bankruptcy court. The jurisdictional authority of the district court to entertain such proceedings either during or after the transition period is by no means clear.[8] In any event, the language of paragraph (2) of subsection (a) of section 405 of the Bankruptcy Reform Act of 1978 to the effect that "any proceeding in a court of bankruptcy in a case under title 11 of the United States Code that is not before a United States bankruptcy judge shall be before the judge of the court of bankruptcy for the district" was intended to permit the Article III judge of the court of bankruptcy to preside only for the purpose of hearing either of the two types of proceedings which a non-Article III United States bankruptcy judge is precluded from hearing by paragraph (1) of such subsection. A construction that the above-quoted language permits an Article III judge of the court of bankruptcy to preside generally as the judge of the court of bankruptcy cannot be reconciled with paragraph (1), which specifies that with two exceptions *all* proceedings in a case shall be before the United States bankruptcy judges. Nor can such a broad construction of the foregoing language be reconciled with the purposeful omission of definitional provisions in former law which permitted the Article III judge of the court of bankruptcy to function generally as the judge of such court.

The congressional intent embodied in section 405(a) is indicated by the Report ac-

---

6. H.R. 6, 95th Cong., 1st Sess., 267–268.

7. The words "may not" as used in title 11 are prohibitive, 11 U.S.C. § 102(4), and probably should be so construed as used in title 28 as well.

8. No exception was made in 28 U.S.C. § 1471 for these types of proceedings, and as previous-

ly indicated it is the view of this court that 28 U.S.C. § 1334 has been repealed. Certainly, § 1334 is repealed as of April 1, 1984. *See also* 28 U.S.C. § 2283 which permits a court of the United States to stay a State court only where necessary in aid of its own jurisdiction.

companying the final version of the Senate bill. The concept of passing jurisdiction over bankruptcy proceedings and matters through the Article III district courts to non-Article III adjunct bankruptcy courts originated in the Senate bill. This was to be accomplished by amendment of 28 U.S.C. § 1334 to include a proposed subsection (d) as follows:

(d)(1) Except as provided in paragraph (2) of this subsection, a bankruptcy judge *may* exercise all powers and jurisdiction conferred on the district court in cases under title 11 and in civil proceedings arising under title 11 or arising under or related to cases under title 11.

(2) A bankruptcy judge may not—

(A) enjoin a State or Federal court; or

(B) punish any person for any acts constituting a contempt of such court by imprisonment or by a fine of more than $1,000.[9]

This section was to be read in conjunction with section 201 of the Senate bill, which like the House bill inserted in title 28 a new Chapter 6 providing for the creation and composition of the bankruptcy courts. Proposed 28 U.S.C. § 164 appearing in such Chapter 6 allowed bankruptcy judges to conduct all proceedings and trials except in municipal debt adjustment and railroad reorganization cases. According to the Senate Report:

Subsection (d), when read in conjunction with section 164 of chapter 6 of title 28, as enacted by section 201 of this bill, restricts the power of the bankruptcy judge in only two areas which have traditionally been reserved to district judges, (1) the enjoining of another court, and (2) the imposition of punishment for contempt of court. District judges are to conduct cases under chapter 9 and railroad reorganization cases under chapter 11. Otherwise, bankruptcy judges shall have full and complete responsibility for cases under title 11 and all litigation arising out of such cases. The use of the term "may" in this section is not intended to imply that the district court has any discretion whatsoever in withholding bankruptcy cases or civil proceedings arising under title 11 or arising under or related to a case under title 11 from the bankruptcy court. The powers of the bankruptcy judge enumerated in section 164 include the power to conduct all proceedings under title 11 except in municipal adjustment and railroad reorganization cases, and in actions under section 1334(b) of this title. It is the intent of these provisions that the bankruptcy court will receive and the bankruptcy judge will handle cases and proceedings under title 11, and that all actions filed under section 1334(b) except those arising in connection with municipal adjustment and railroad reorganization cases will be automatically referred to the bankruptcy judge. It is contemplated that rules of Bankruptcy Procedure will be adopted to carry out this intent in order that the bankruptcy judge shall exercise the full range of jurisdiction in bankruptcy cases and proceedings. Except for municipal adjustment and railroad reorganization cases, the district judge will be expected to act in title 11 cases only in limited instances (1) where it is necessary to enjoin a State or Federal court or (2) to punish a person for contempt by imprisonment or by a fine of more than $1,000. Otherwise, the district judge will function only as an appellate judge in bankruptcy matters, as provided in subsection (e) of this section.

Subsection (e)(1) confers upon the district court for each judicial district jurisdiction of appeals from (A) final decisions and interlocutory orders of the bankruptcy court in bankruptcy cases, and (B) final judgments, orders, and decrees of the bankruptcy court for such district in proceedings arising under title 11 or arising under or related to cases under title 11. Subsection (e)(2) provides that the decisions of the bankruptcy court shall be final unless a notice of appeal to a district judge is timely filed. It is contemplated that the manner and time for filing a

**9.** S. 2266, 95th Cong., 2d Sess., § 216, July 14, 1978.

notice of appeal will be set forth in Rules of Bankruptcy Procedure.[10]

The command in section 405(a) of the Bankruptcy Reform Act of 1978 that bankruptcy cases and proceedings *shall* be handled by bankruptcy judges is even more forceful and positive than the foregoing language of the Senate bill and should be interpreted accordingly.

As previously indicated, because of last minute changes to 28 U.S.C. § 1481, the language in present section 405(a) purporting to permit an Article III judge of the court of bankruptcy to hear proceedings filed in the court of bankruptcy to restrain a court or to punish a criminal contempt has been rendered meaningless because the court of bankruptcy has been deprived of power to entertain such proceedings.

It follows from the foregoing analysis that the terms "court of bankruptcy" and "judge of the court of bankruptcy" as used in Title IV of the Bankruptcy Reform Act of 1978 should not be construed to authorize Article III judges of the court of bankruptcy to exercise any of the judicial powers of the court of bankruptcy.

It is also quite apparent that the courts of bankruptcy and the district courts are not identical. It was the intention of Congress that each court of bankruptcy should function as a separate court of record with its own clerk and supporting personnel, presided over only by a United States bankruptcy judge, during the transition period, in the same manner that the bankruptcy court was to function as a separate court of record at the end of the transition period. Otherwise, for example, conceptually, how was it to be possible to remove a civil action from the district court to the court of bankruptcy as provided for by 28 U.S.C. § 1478, made applicable during the transition period by section 241(a) of the Bankruptcy Reform Act of 1978, or how could there be an appeal from the court of bankruptcy to the district court as provided by section 238 of the Bankruptcy Reform Act of 1978, as

made applicable during the transition period by section 405(c)(2) of such Act. Moreover, the elevated status of the district courts as the intermediate courts of appeals from judgments, orders, and decrees of the courts of bankruptcy is inconsistent with the notion that the judges of the district courts may also function generally as trial judges of the courts of bankruptcy.

■ Because the courts of bankruptcy during the transition period, like the bankruptcy courts that are to come into existence at the end of the transition period, consist only of the United States bankruptcy judge or judges in active service in the district, insofar as the exercise of the judicial powers of such courts are concerned, section 105 of the Bankruptcy Code, which authorizes the court of bankruptcy/bankruptcy court to issue any order, process, or judgment that is necessary and appropriate to carry out the provisions of title 11, does not, in the view of this court, authorize Article III judges of a court of bankruptcy to adopt the so-called Model Rule adopted in this district on December 24, 1982 in conformity with an order of the Judicial Council of the Circuit.

In ordering the "district courts" to adopt such rule, the Council has by judicial fiat attempted to obliterate the distinction that has existed since 1898 between the court of bankruptcy and the district court in each judicial district, a distinction which Congress recognized and seized upon as the medium for testing the new bankruptcy court system in order to determine the number of judges that would be needed for operation of the new court system commencing April 1, 1984.

*Part II*

A. Jurisdiction under 28 U.S.C. § 1471(a) and (b).

In *White Motor Corporation v. Citibank,* 704 F.2d 254, April 1, 1983, a panel of three judges of the Court of Appeals for the

---

**10.** S.Rep. No. 989, 95th Cong., 2d Sess., 154–155 (1978), U.S.Code Cong. & Admin.News 1978, pp 5940–5941.

Sixth Circuit concluded (1) that the decision of the Supreme Court in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co., supra,* invalidates as unconstitutional only the jurisdictional grant to bankruptcy courts in 28 U.S.C. § 1471(c) so that § 1471(a) and (b) which invest the district courts with jurisdiction of all cases under title 11 and all civil proceedings arising in or related to such cases remain operative, or (2) in the alternative, if 28 U.S.C. § 1471(a) and (b) are also invalidated, the district courts nevertheless have jurisdiction under old 28 U.S.C. § 1334, which remains extant during the transition period or, in any event, is revived as a result of the invalidation of § 1471.

With respect to the first conclusion above another panel of three judges of the court of appeals for this circuit in *Rhodes v. Stewart,* 705 F.2d 159, decided April 11, 1983 (ten days after the decision in the *White Motor Corporation* case), were of the view that a plurality of six justices in the *Northern Pipeline* case agreed that the jurisdictional grant of § 1471 was unconstitutional *in toto* and could not be redeemed through division or severance of the offending exercises of jurisdiction.

█ The latter decision is obviously correct. The Supreme Court declared section 241(a) of the Bankruptcy Reform Act of 1978 unconstitutional. Section 241(a) enacts a new Chapter 90 of title 28 of the United States Code containing sections 1471 through 1482. A suggestion that only § 1471(c) of title 28 was declared unconstitutional in *Northern* produces anomalous consequences. It means that the venue provisions of Chapter 90, §§ 1472–1473 specifying that bankruptcy cases and proceedings arising in or related to such cases shall be filed in the bankruptcy court, remain operative even though the bankruptcy court has no jurisdiction over such matters. It means that civil actions related to a bankruptcy case can still be removed from state courts or district courts to the bankruptcy courts pursuant to § 1478 even though the bankruptcy courts no longer have jurisdiction over such civil proceedings. It means that

a panel of non-Article III bankruptcy judges can exercise the judicial power of the United States at the appellate level under § 1482 even though they can no longer exercise the judicial power of the United States at the trial court level. Surely the plurality of six justices meant to hold and did hold that all of Chapter 90 is unconstitutional because the conclusion that non-Article III judges may not exercise the judicial power of the United States renders the whole chapter dysfunctional.

It may be argued that the observations of the panel of three judges in *Rhodes* concerning the holding of the Supreme Court in *Northern* is dicta. If so, the assertions of the panel of three judges in the *White Motor Corporation* case concerning *Northern* is likewise dicta.

In each case the order of the bankruptcy court was entered in 1981 and therefore was not directly affected by the decision in *Northern.*

The issue in the *White Motor Corporation* case was whether the court of bankruptcy/bankruptcy court could appoint a special master to hear and make a recommendation to the court concerning the disposition of certain product liability cases. In view of the holding of the Supreme Court in *Northern* that a non-Article III bankruptcy tribunal cannot be invested, long term, with all the powers of a court of equity, law, and admiralty, a simple negative answer to this question is all that was required, whether the non-Article III tribunal derived its jurisdictional powers from a statute by reason of the delay of the mandate in the *Northern* case or from the district court by reason of the Model Rule. The court apparently overlooked Rule 9031 of the Proposed Rules of Bankruptcy Procedure approved by the Judicial Conference on September 22–23, 1982. This rule, which as a matter of policy will preclude appointment of a special master by a bankruptcy court, was recommended by the Advisory Committee on Bankruptcy Rules apparently in direct response to the question presented by the appeal to the district court and to the court of appeals in the *White Motor Corporation*

case. Because the operative facts in the *White Motor Corporation* case occurred long before adoption of the Model Rule and in view of the guidance offered by the decision of the Supreme Court in the *Northern* case and by the Judicial Conference in approving Rule 9031 of the Proposed Rules of Bankruptcy Procedure, there was no necessity for the court to grapple with the issue of the validity of the Model Rule in order to answer the question presented by the appeal in the *White Motor Corporation* case. In this sense, most of the opinion in that case appropriately may be characterized as dicta.

In any event, the holding in the *White Motor Corporation* case that 28 U.S.C. § 1471(a) and (b) invest the district courts with jurisdiction of bankruptcy cases and proceedings has been overruled by the later pronouncement in the *Rhodes* case.

The remaining alleged source of derivative jurisdiction pursuant to which bankruptcy cases and proceedings may be delegated to the transition courts of bankruptcy is 28 U.S.C. § 1334.

B. Jurisdiction under 28 U.S.C. § 1334.

██ There are a multiplicity of reasons for rejecting the argument that Congress continued 28 U.S.C. § 1334 in effect during the transition period as a failsafe measure to provide a jurisdictional basis for the courts of bankruptcy to continue to administer bankruptcy cases and proceedings in the event the non-Article III adjunct bankruptcy court system were declared unconstitutional.

1. None of the courts which have held that the district courts have jurisdiction over bankruptcy matters and proceedings under 28 U.S.C. § 1334, which jurisdiction may in turn be delegated to the transition courts of bankruptcy pursuant to the so-called Model Rule, have paused to examine the scope of the arcane jurisdictional grant in § 1334. No person knowledgeable in the history and development of our bankruptcy laws would suggest that a functional bankruptcy system can operate under the jurisdictional grant of § 1334 with its troublesome exclusivity provision and virtually unintelligible "matters and proceedings" jargon.[11] If the vague "matters and proceedings" terminology appearing in § 1334 is sufficiently comprehensive in scope to include all civil actions arising in or related to a bankruptcy case, and if such jurisdiction is triggered by the filing of a case under title 11 in the court of bankruptcy, it would seem to follow that thereafter, because of the exclusivity provision in § 1334, all proceedings in relation to such a case must be pursued in the court of bankruptcy. Yet in the *White Motor Corporation* case the appellate court suggested that the district court may want to consider whether to permit the products liability cases against the debtor "to go forward in the courts where they were pending initially." By what authority might the district court do that if its jurisdiction over such litigation under § 1334 is exclusive?

Clearly, 28 U.S.C. § 1471(b) was intended to override the anachronistic exclusivity provision in 28 U.S.C. § 1334.

What venue provisions govern bankruptcy cases and proceedings therein grounded on the jurisdictional grant in § 1334? As hereinabove pointed out the venue provisions in 28 U.S.C. §§ 1471 and 1473 have been invalidated. The venue provisions of 28 U.S.C. § 1391 do not offer guidance as to where a bankruptcy case may be filed and certainly do not authorize a civil proceeding to be commenced in a court where a bankruptcy case is pending unless all the defendants reside in the district.

There is no provision in § 1334 giving the court jurisdiction over property of the debtor "wherever located." With 28 U.S.C. § 1471(e) stricken, the jurisdictional grant in § 1334 is completely deficient in cases involving property located in several states.

---

11. The "matters and proceedings" phraseology appears in the Bankruptcy Act of 1867 where it is embellished by specific jurisdictional grants. *See Hearings on H.R. 31 and H.R. 32 before the*

*Subcommittee on Constitutional Rights of the Committee on the Judiciary, House of Representatives,* 94th Cong., 1st and 2d Sess., Supp. Appendix Part 1 at 29 (1976).

The purpose here is not to provide answers to these difficult questions but simply to call attention to the superficial manner in which the courts have dealt with this issue, and to rebut the suggestion that Congress retained § 1334 in effect as a fallback jurisdictional measure.

The drafters of the Bankruptcy Code recognized the deficiencies in § 1334 and simply scrapped the measure as no longer necessary.

2.  Section 1334 of title 28 has never been viewed as providing jurisdiction for the courts of bankruptcy, as distinguished from the district courts, to administer bankruptcy cases and proceedings. Instead, section 2a of the old Act, 11 U.S.C. § 11(a), invested the courts of bankruptcy with original, *but not exclusive,* jurisdiction to determine controversies in relation thereto. If section 1334 providing the district courts with *exclusive* jurisdiction over bankruptcy matters and proceedings operates to confer similar jurisdiction on the separate courts of bankruptcy, then the now repealed section 2a of the Bankruptcy Act existed for eighty years as both conflicting and superfluous legislation. Obviously, section 2a of the Bankruptcy Act was necessary precisely because 28 U.S.C. § 1334 never operated to invest the separate courts of bankruptcy with jurisdiction over bankruptcy matters and proceedings.

3.  If old § 1334 has not been repealed by implication or stands revived, are both versions of the statute extant during the transition period? In her opinion in *Citibank v. White Motor Corporation,* 23 B.R. 276, 9 BCD 882 (D.C.Ohio 1982), Judge Aldrich recited that the district court had jurisdiction of the appeal from the court of bankruptcy by reason of "future 28 U.S.C. § 1334" which is made applicable during the transition period by section 405(c)(2) of the Bankruptcy Reform Act of 1978. The Court of Appeals for the Eleventh Circuit has held that the new version of § 1334 is now in effect. *See In Re International Horizons, Inc.,* 689 F.2d 996, 1000 n. 5 (1982). If old § 1334 is revived as suggested by the panel of judges in the *White Motor Corporation* case, and new § 1334 has been "bumped" from the statute books by such revival, it may follow that the district court did not have jurisdiction of the appeal in the *White Motor Corporation* case, with the result that the appeal was improperly before the court of appeals as well. In fact it would seem to mean that all the decisions of the district courts sitting as intermediate appellate courts and of the circuit courts of appeals, including decisions concerning the validity of the Model Rule, are void, except in those cases where the appeal has gone directly to the court of appeals by consent of the parties, as for example in *Rhodes.*

The presumption that old § 1334 has been repealed is at least as compelling as the presumption that both versions of § 1334 are in effect simultaneously.

The argument that § 1334 is revived by the invalidation of § 1471 is not particularly persuasive because § 1471 replaced sections 2a, 23 and the "property wherever located" phraseology of section 70a of the Bankruptcy Act, rather than § 1334.

4.  The insistence that Congress carefully kept the jurisdiction of the district courts under 28 U.S.C. § 1334 in effect during the transition period because Congress was concerned about the constitutionality of the broad jurisdictional grant under section 1471 to non-Article III bankruptcy courts is an argument that defeats itself. If Congress had been so concerned it would have kept section 1334 permanently in place because surely there was no way to predict when a challenge to such jurisdiction might occur.

It is interesting to note that a leading proponent of this argument was a member of an Ad Hoc Committee of the Judicial Conference that on November 28, 1977, through a spokesman, advised sponsors of the Senate bill as follows:

[F]rom the standpoint of the constitutionality of the bankruptcy judge assuming increased powers, there was a unanimity in this committee and there was unanimity in the Judicial Conference of the United States that Article III status was not

necessary to assume that expanded jurisdiction. Circuit conferees, consisting of every district and every circuit judge within a circuit, have concluded that an Article III judge is not necessary. *See Hearings on S. 2266 and H.R. 8200 Before the Subcommittee on Improvements in Judicial Machinery of the Committee on the Judiciary, United States Senate,* 95th Cong., 1st Sess. 411, 413–414 (Nov. 28, 29 and Dec. 1, 1977).

The legislative history cited by the court in the *White Motor Corporation* case reveals the concern of members of the Subcommittee on Civil and Constitutional Rights of the House Judiciary Committee about establishing the bankruptcy court as a non-Article III court on a permanent basis. The House Judiciary Committee was so concerned about this matter that after passage of the Danielson-Railsback Amendment, which provided for a non-Article III bankruptcy court, it withdrew H.R. 8200 from further consideration on the floor and held additional hearings on the issue.[12]

There is no legislative history to document a concern on the part of members of the House Judiciary Committee about the exercise of the judicial power of the United States by non-Article III bankruptcy judges during the relatively short transition period from the old court system to the new system. The Supreme Court has recognized that where necessary and justified by an exigency a non-Article III judge may exercise the judicial power of the United States for a transitory period. *Metlakatla Indian Comm. v. Egan,* 363 U.S. 555, 80 S.Ct. 1321, 4 L.Ed.2d 1397 (1960); *Glidden v. Zdanok,* 370 U.S. 530, 82 S.Ct. 1459, 8 L.Ed.2d 671 (1962).

The members of the House Judiciary Committee were concerned about the exercise of such jurisdiction by non-Article III judges long-term, a concern ultimately shared by six justices in *Northern.*

5. As pointed out in Part I of this opinion the idea of laundering the jurisdiction of the bankruptcy court through the district court to impermeate it with an Article III aroma in the belief that such jurisdiction might then be exercised by non-Article III judges of an adjunct bankruptcy court originated in the Senate bill. The bill passed by the Senate on September 7, 1978 utilized a completely redrafted section 1334 both as the vehicle to pass jurisdiction through the district courts to the adjunct bankruptcy courts and to confer on the district courts jurisdiction of appeals from the bankruptcy courts. Under the Senate proposal the judges of the adjunct bankruptcy courts were to be appointed for twelve-year terms by the circuit courts.

The bill which had been passed by the House on February 7, 1978 provided for creation of an Article III bankruptcy court, the judges of which were to be appointed by the President to hold office during good behavior. The jurisdictional provisions in the House bill were contained in proposed 28 U.S.C. § 1471.

Following discussions between House and Senate sponsors of these bills, it was agreed that bankruptcy judges would be appointed by the President to hold office for a term of fourteen years rather than during good behavior. In view of the fact that the bankruptcy court was to be established as a non-Article III court, in order to enhance the status of the court, it was agreed that the court would be created as an adjunct of the courts of appeals, with the jurisdiction of the court to be Article III scented by filtration through the courts of appeals rather than the district courts. This was to be accomplished by amendments to title 28, as follows:

§ 151. Creation and composition of bankruptcy courts

(a) There shall be established in each judicial district, as an adjunct of the circuit court for the circuit in which such district is located, a bankruptcy court which shall be a court of record known as

---

**12.** *Hearings on H.R. 8200 before the Subcommittee on Civil and Constitutional Rights of the Committee on the Judiciary, House of Representatives,* 95th Cong., 1st Sess., Dec. 12, 13, and 14, 1977; H.Rep. No. 13, 95th Cong., 2d Sess., Jan. 1978.

the United States Bankruptcy Court for the district.

§ 1471. Jurisdiction

(a) Except as provided in subsection (b) of this section, the courts of appeals shall have original and exclusive jurisdiction of all cases under title 11.

(b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the courts of appeals, the courts of appeals shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11 or arising in or related to cases under title 11.

(c) The bankruptcy court for the district in which a case is commenced under title 11 shall exercise all of the jurisdiction conferred by this section on the courts of appeals.

(d) Subsection (b) or (c) of this section does not prevent a court of appeals or a bankruptcy court, in the interest of justice, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11. Such abstention, or a decision not to abstain, is not reviewable by appeal or otherwise.

(e) The bankruptcy court in which a case under title 11 is commenced shall have exclusive jurisdiction of all the property, wherever located, of the debtor, as of the commencement of such case.

A compromise bill in this form was passed by the House by unanimous consent on September 28, 1978 and was scheduled for passage by the Senate later on the same date.[13] For reasons which were generally well publicized[14] but which are not documented in legislative history, the Senate reneged on the compromise agreement and delayed action on the legislation. As a result of further negotiation and compromise the bankruptcy court was unhinged from the court of appeals and "readjuncted" to the district court as originally proposed in the Senate bill, and the provisions of 28 U.S.C. §§ 151 and 1471 were redrafted accordingly as they appear in their present form.

It should be noted however that in both the initial and final versions of the compromise bill, 28 U.S.C. § 1334 (the Senate bill jurisdictional proposal) was jettisoned in favor of 28 U.S.C. § 1471 as the vehicle for passage of jurisdiction through the district courts to the bankruptcy courts.[15]

In both versions of the compromise legislation 28 U.S.C. § 1334 was used only to confer on the district court jurisdiction of appeals from judgments, orders and decrees of the bankruptcy court, indicating that other proposed amendments that would have been made to section 1334 by the Senate bill were discarded as unnecessary.

One purpose of this short recitation of legislative history is to illustrate that the House and Senate sponsors of bankruptcy reform legislation in the Ninety-Fifth Congress did not entertain any notion of keeping section 1334 in effect as a backup jurisdictional measure in the event the adjunct non-Article III bankruptcy court system should be declared unconstitutional. If the bankruptcy courts had been created as adjuncts of the courts of appeals as initially agreed upon by such sponsors, the system nevertheless would have been unconstitutional under the *Northern* analysis. How then could section 1334 jurisdiction have been transmitted to a court of appeals and radiated by that court to its adjunct courts of bankruptcy? One can envision the necessity to construct a large antenna atop the Federal building in Cincinnati to pick up section 1334 jurisdictional vibrations from the district courts to be beamed back to the adjunct bankruptcy courts. All of this is fanciful stuff, but perhaps no more fanciful than the attempted delegation of non-

---

**13.** 124 Cong.Rec., H 11047, H 11082, H 11088 (daily ed. Sept. 28, 1978).

**14.** Ross, *Chief Justice Seeks Delay on Bankruptcy Legislation,* The Washington Post, Oct. 3, 1978, at C 11, col. 5; Mintz, *Chief Justice Hit*

*Ceiling, Sen. DeConcini Charges,* The Washington Post, Oct. 7, 1978, at C 1, col. 1.

**15.** 124 Cong.Rec., S 17403–17434 (daily ed. Oct. 6, 1978).

existent section 1334 jurisdiction from the district courts to the bankruptcy courts by means of the Model Rule.

6. Assuming for purposes of discussion that the district courts do indeed have jurisdiction over bankruptcy cases and proceedings arising in or related to such cases under either 28 U.S.C. § 1471 or 28 U.S.C. § 1334, none of the decisions so holding have explained how this jurisdiction is invoked by the filing of a bankruptcy case or an adversary proceeding arising therein or related thereto with the clerk of an entirely separate court, the court of bankruptcy.[16]

Apparently, those who believe such jurisdiction exists in the district courts and that it may be delegated to the courts of bankruptcy pursuant to the Model Rule continue to entertain the notion that the courts of bankruptcy are adjuncts of the district courts even though six justices in *Northern* invalidated section 241(a) of the Bankruptcy Reform Act of 1978 because the bankruptcy courts are created as "adjuncts" of the district court in name only and not in fact.

The bankruptcy court flunked all of the tests applied by Justice Brennan in Part IV of his opinion for the purpose of determining whether the court was an adjunct as opposed to an independent tribunal. He emphasized the failure of the bankruptcy court to qualify as an "adjunct" of the district court by consistently placing the word "adjunct" in quotation marks.

Justice Rehnquist was even more emphatic in his concurring opinion.

All matters of fact and law in whatever domains of law to which the parties' dispute may lead are to be resolved by the Bankruptcy Court in the first instance, with only traditional appellate review apparently contemplated by Art. III courts. *Acting in this manner the Bankruptcy Court is not an "adjunct" of either the District Court or the Court of Appeals.* (emphasis supplied).

16. For example, the district courts have federal question jurisdiction under 28 U.S.C. § 1331, but no one would argue that such jurisdiction is

If the bankruptcy courts created by Congress are *not* adjuncts of the district courts, and under Article III of the Constitution only Congress is authorized to create and assign functions to inferior courts, by what authority may the Judicial Branch authorize the district courts to recapture and reformulate the courts of bankruptcy/bankruptcy courts and assign to such courts a former role from which they have been systematically, specifically and purposefully liberated by Congress. The national rule-making authority of the Judicial Branch is subject to scrutiny by Congress and national rules cannot take effect until they have been approved by Congress. 28 U.S.C. § 2075. By any test the so-called Model Rule is a national rule. It was formulated at the behest of and was disseminated by the Judicial Conference of the United States. The district courts did not adopt the rule of their own volition; they were ordered to do so by the Judicial Councils of the eleven circuits. The evasion of the requirements of 28 U.S.C. § 2075 by classification of the Model Rule as a local rule, however well intentioned in the interest of avoiding chaos, is nevertheless a resort to judicial anarchy. In other words the rule creates that which it attempts to avoid.

We are certain that after reviewing the history of the Model Rule recited in the *White Motor Corporation* case and noting the requirements of 28 U.S.C. § 2075, the Court of Appeals for this circuit will revise its views concerning this matter.

For the same reason that the bankruptcy courts are not "adjuncts" of the district court merely because the statute says they are, the Model Rule is not a local rule merely because it has been so categorized.

In any event, the rule-making authority of the Judicial Branch does not extend to the restructuring of the Federal court system or to the splicing of jurisdictional fibers severed by the Supreme Court. These are matters within the exclusive province of Congress.

invoked by raising a federal question in pleadings filed in a State court.

*Part III*

We assume that in sanctioning the Model Rule the panel of judges in the *White Motor Corporation* case did not intend to preclude the lower courts from pointing out specific defects in the rule. Under the facts of this case, subsections (D)(2) and (3) of the rule operate to deny the debtor a trial before an Article III judge on its counterclaim against Columbia Gas of Kentucky, Inc. for alleged use of the bankruptcy laws to take over the debtor's business. For this reason the rule is unconstitutional under the rationale of the recent holding of the United States Court of Appeals for the Fourth Circuit in *1616 Reminc Limited Partnership v. Atchinson & Keller Co.*, 704 F.2d 1313, April 14, 1983.