In the Matter of FIRST UNITED PARTNERS 9, Debtor.

FIRST UNITED PARTNERS 9, Plaintiff,

v.

WILLIAMS MEAT COMPANY, Defendant.

Bankruptcy No. 85–01301–3–11.
Adv. No. 85–0677–3–11.

United States Bankruptcy Court, W.D. Missouri, W.D.

Oct. 8, 1986.

## ORDER DENYING MOVANT'S MOTION FOR RECONSIDERATION

DENNIS J. STEWART, Chief Judge.

The court formerly entered its final decree and judgment on January 30, 1986, declaring the sale agreement of July 26, 1984, between First United Partners 9 (seller) and Sexton Family Trust (buyer) void, and declaring, as a result, that the amendment to the July 17, 1984, lease agreement entered into between Williams Meat Company and First United Partners 9 and contained in the sale agreement, was also void. Accordingly, turnover of rental payments due under the original lease was directed. The court predicated its decision on two principal grounds: (1) that the bankruptcy court could constitutionally exercise jurisdiction to determine, as was done, a controversy between strangers to the estate generally regarded as one "related to" bankruptcy proceedings within the meaning of 28 U.S.C. § 157(b)(1), when it would be impossible to administer the reorganization proceedings without its resolution and (2) that the circumstances surrounding the sale of the property commonly known as 4420 Madison Avenue, Kansas City, Missouri, and the lease modification contained therein, compelled a finding that it was an "unconscionable contract of adhesion which the debtor was compelled to sign because of 'economic duress' or 'business compulsion'." *Matter of First United Partners 9,* 58 B.R. 685, 690 (Bkrtcy.W.D.Mo.1986). The court also held that the defendant lacked standing to prosecute an action that would require certain members of the partnership to make payments on their investor notes.

On February 7, 1986, the defendant filed with this court its motion to amend or alter the judgment of January 30, 1986, or to make additional findings, or for reconsideration or for new trial. The basis of the defendant's challenge to the court's decision of January 30, 1986, consists of two principal objections: (1) that this court had no jurisdiction to resolve this dispute and (2) that the evidence presented did not support the court's findings of fact and, therefore, its conclusions of law. Those separate challenges will be considered serially in the paragraphs which follow.

### Jurisdiction

The challenge to bankruptcy jurisdiction is, as observed above, placed upon the ground that the substance of this action requires, under *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), that it be determined by an Article III court. This objection was anticipated by this court on the challenged judgment, wherein it is stated as follows:

"[E]ven without a motion before it, [this court] is obliged to take up *sua sponte* [the issue of its jurisdiction]. See § 157(b)(3), Title 28, United States Code. [T]he provisions of § 365(h) [defining lessee's rights in relation to a debtor-lessor] make the issue of what obligations are imposed upon the lessee one of 'nonbankruptcy' or state law. Thus, it at once defines the action which arises on this issue as one arising under state law and makes its resolution essential to the administration of the bankruptcy estate. Insofar as its resolution is essential to the bankruptcy estate, it appears, under a long line of traditional authority, to be within bankruptcy court jurisdiction.

"The action itself, however—one to determine whether one contract or another is in existence—arises solely and exclusively under state law. The governing bankruptcy statutes themselves foreclose any possibility that this action could be considered to arise under bankruptcy laws. This action, therefore, must, at most, be regarded as one 'related to' bankruptcy preceedings within the meaning of § 157(b)(1), Title 28, United States Code, as to which the bankruptcy court is obliged to render a report and recommendation to the district court, rather than decide the action itself, in accordance with § 157(c)(1) of the same title.

"But in this case, for this court to render a report and recommendation to the district court would result in the destruction of federal court jurisdiction. For the evidence, *inter alia*, clearly shows that a state court action is currently pending in which the debtor has sought, in substance, to have the subsequent lease amendments declared invalid and to eject the Williams Meat Company from the premises. And, under the provisions of § 1334(c)(2), Title 28, United States Code, when a state court action is pending in a related case, the district court is required to abstain in favor of the state court action. The probability of the district court's abstaining from the action, moreover, is greatly increased to around 100% by the existence of the back-up, permissive abstention statute, § 1334(c)(1), Title 28, United States Code."

The defendant, in the motion at bar, without citation to any authority, contends that:

"The Court [should] alter, amend, or reconsider its findings of jurisdiction to hear this combination contract, lease, rent action, as the Court should clearly abstain from hearing under Title 28 U.S. Code, section 1334(c)(2), the identical issues presently being before the Circuit Court of Jackson County, Missouri, ... The parties had advised the Court that that case is on the Court's trial docket for the week of February 10, 1986, and this Court clearly does not have jurisdiction, and should have abstained from the action. Further, the Court's finding that reorganization of the bankrupt without hearing this action being 'impossible' was completely contrary to and not supported by the evidence, and disregarded [that there are] over $800,000 in investor notes due and owing the bankrupt.

"The Court has acted in effect as an Article 3 judge and accordingly the Court's findings of fact, et al. of January 30, 1986 [sic] are in excess of the Court's jurisdiction and the court should reconsider and withdraw such order."

A universal tenet of bankruptcy law is that "bankruptcy courts are courts of limited jurisdiction, ... whose power to act must be found expressly or impliedly in the Bankruptcy Act." *Matter of Paso Del Notre Oil Co.*, 755 F.2d 421, 424 (5th Cir. 1985). As such, "a bankruptcy court lacks jurisdiction of a controversy solely and exclusively between parties which does not involve, directly or indirectly, the bankrupt or its property." *First State Bank and Trust Co. v. Sand Springs State Bank*, 528 F.2d 350, 353 (10th Cir.1976); *In re Shirley Duke Associates*, 611 F.2d 15, 18 (2nd Cir 1979). "[A] court of bankruptcy does have jurisdiction to determine a dispute between third parties concerning the ownership of property if it is impossible to administer completely the estate of the bankrupt without determining the controversy." *First State Bank and Trust Co. v. Sand Springs State Bank, supra*, 528 F.2d at 553.

The motion of the defendant now accuses this court of arrogating Article III powers to itself. But the decisions which have been rendered in the wake of *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 785 (1982), have not clearly demonstrated the boundaries of non-Article-III power. They have, in a signal departure from prior constitutional authority, indicated that a bankruptcy court may occasionally exercise Article III powers. See, e.g., *In re Johnson County Gas Co., Inc.*, 30 B.R. 690, 701 (Bkrtcy.E.D.Ky.1983), to the effect that, "where necessary and justified by an exigency an non-Article III

judge may exercise the judicial power of the United States for a transitory period." This holding was in contrast to prior decisions on the subject, which reserved the "exigency" provisions for territories and nascent states, where there were no other courts except non-Article III courts to exercise the federal judicial power.[1] But it has nevertheless seemed to have commenced a trend in decisional law which has continued to the present day, under which, as this court recently observed, the line between Article III and non-Article III powers "daily grow more blurry." *Matter of Brewer*, 65 B.R. 75 (Bkrtcy.W.D.Mo.1986).[2] When reference of the action to the district court for decision would defeat the federal jurisdiction which must be exercised if the goals of the Bankruptcy statutes are to be maintained, the bankruptcy court may exercise jurisdiction, even if it means exercising Article III powers in an isolated case. *Matter of Burstein-Applebee Company*, 63 B.R. 1011 (Bkrtcy.W.D.Mo.1986); *Matter of Transport Clearings-Midwest, Inc.*, 41

B.R. 528, 539 (Bkrtcy.W.D.Mo.1984). And see *Matter of Phillips House, Inc.*, 64 B.R. 912 (Bkrtcy.W.D.Mo.1986), to the effect that "[w]hatever the rationale for this court's assuming and exercising jurisdiction of this case ... it is imperative that this court proceed to a determination of it." At the time the determination of this action was made, the evidence before the bankruptcy court clearly demonstrated that the decision was necessary to be made within a matter of days if the debtor was to have any hope of gaining the funds necessary to forestall a foreclosure planned by its mortgagee, World Savings and Loan Association.

### *Sufficiency of the Evidence*

The defendant next asserts that the evidence before the court was insufficient to support the judgment to the effect that the contract was unconscionable and should be avoided. But the simple operative facts shown by the evidence were these: that the debtor, brought to a position of financial

---

1. "'The touchstone of decision in all these cases has been the need to exercise the jurisdiction then and there and for a transitory period. Whether constitutional limitations on the exercise of judicial power have been held inapplicable has depended on the particular *local* setting, the practical necessities, and the possible alternatives ... Since the conditions obtaining in one territory have been assumed to exist in each, this Court has in the past entertained a presumption that even those territorial judges who have been extended statutory assurances of life tenure and undiminished compensation have been so favored as a matter of legislative grace and not of constitutional compulsion.... the presumption should be reversed when Congress creates courts the continuing exercise of whose jurisdiction is ... to carry into effect powers ... over subject matter ... and not over localities.' *Glidden v. Zdanok*, 370 U.S. 530, 547, 548, 82 S.Ct. 1459, 1471, 1472 8 L.Ed.2d 671 (1962). See also *Marathon, supra*, [458 U.S. at 69, n. 23,] 102 S.Ct. at 2870, n. 23."

2. In that opinion, the court summarized some of the decisions which seemed to blur the distinction between district court and bankruptcy court jurisdiction as follows:

   "[T]ime restrictions permit the mention of only a few of these attributions in this opinion. But they include a ruling that the bankruptcy courts, like Article III courts and unlike non-Article-III courts, may not issue advisory opinions, *Matter of Hamilton*, Civil Ac-

tion No. 83–6070–CV–SJ (W.D.Mo. May 14, 1984); see also *Matter of Transport Clearings-Midwest, Inc.*, 41 B.R. 528, 539 (Bkrtcy.W.D. Mo.1984); a ruling that the bankruptcy court, rather than the district court, should initially determine a claim based on agency principles arising under state law, *Matter of Walker*, 726 F.2d 452 (8th Cir.1984); a ruling that the bankruptcy court occupies the position of the initial trial court in the hierarchy of the federal judiciary and, under statutes governing bankruptcy appeals, an appeal from a district court decision to the appellate court cannot be taken unless there was an initial appeal of the same issue from a bankruptcy court decision, *In re Benny*, 791 F.2d 712, 716 (9th Cir.1986); a ruling that the 'clearly erroneous' standard of review implies that the bankruptcy court has powers greater than those possessed by pure Article I courts, *In re AOV Industries, Inc.*, 792 F.2d 1140 (D.C.Cir.1986); and a recognition that the applicable statutory scheme of the Bankruptcy Amendments and Federal Judgeship Act of 1984 grants the bankruptcy court the sole power to enjoin state court actions against trustees and other officers of a bankruptcy estate. *Matter of Burstein-Applebee, Inc.*, 63 B.R. 1011 (Bkrtcy. W.D.Mo.1986). The distinction between the types of cases determinable by Article III courts and the bankruptcy courts daily grows more blurry; and consequently, this court may act with some self-assurance that it has jurisdiction of the action at bar."

distress, in part by the failure of the defendant to make its payments under a preexisting lease of the subject premises, was faced with the defendant's offer either to accept the agreement of July 26, 1984, which vastly reduced the lease payments which the debtor receive (and thereby receive some cash infusion to alleviate the financial distress), or else suffer disaster as the defendant continued to refuse to pay. The full oppressive character of the agreement which was signed is made evident by the fact that the lease payments would have not permitted the debtor sufficient income to make its mortgage payment to World Savings and Loan Association. Truly, the agreement was shown to have been such as no man in his right mind would have accepted and thus squarely within the categories of contracts which are nullifiable as "unconscionable" or "contract of adhesion." This contention of the defendant must also therefore be rejected.

A second species of alleged insufficiency of the evidence is the defendant's assertion that the evidence was insufficient to demonstrate the impossibility of reorganization without the decision at bar. This is said to be so because the debtor's investors could have been sued to pay the purchase price of their subscriptions. But the action at bar, for the foregoing reasons, to forestall the impending foreclosure by the mortgagee, was many times more urgent. The decision in this case, as observed above, had to be made in a matter of days if the debtor was to continue to have hope of a viable reorganization. This contention is therefore rejected.

### Other Miscellaneous Contentions of the Movant

The defendant raises other, less material contentions and considerations in the pending motion to alter or amend judgment, including contentions respecting some clerical errors in the challenged findings of fact and conclusions of law. These do not affect the correctness of those findings and conclusions, but the court nevertheless, contemporaneously herewith, is issuing its order correcting the minor clerical errors.

It is contended by the movant that the court could not have reasonably reached a conclusion that the subject agreement of July 26, 1984, was a product of coercion or "business compulsion" when the person who signed the agreement on behalf of the debtor, Sam Daily, neither appeared nor testified at the trial hereof. But the testimony of Mr. Daily himself can hardly be regarded as indispensable to a finding of coercion or "business compulsion." This is particularly so in view of the facts otherwise shown in this case. As observed above, they are to the effect that the defendant's failure to make payments on the existing lease contributed to a situation in which the debtor fell on such dire economic circumstances that it was compelled, for the sake of momentary cash infusion offered by the defendant, to consent to such a reduction in lease payments that it could not meet the mortgage payments to its mortgagee. Clearly, the contract was one which no man in his right mind would have signed, within the meaning of the governing authorities. This contention must therefore be rejected.

Defendant also contends that there is no evidence to support the finding that the balance due is $143,028.02. But this was the amount alleged in the complaint filed by plaintiff, and there is no effective denial thereof in the responsive pleadings filed by the defendants.

It is said that this court "failed to make a ruling on the Motion to Dismiss filed by Williams Meat Company." The only motion to dismiss was the subject of a hearing July 8, 1985, before Judge Pelofsky. The fact that it was overruled, at least by implication, is evidenced by Judge Pelofsky's issuing a ruling which rejected the sale agreement of July 26, 1984, a ruling which was considered unfavorable to the defendant. The issues underlying the motion to dismiss were never presented to the undersigned.

Otherwise, the defendant's contentions, which are presented at great length, appear to repeat the contentions which are above rejected. Therefore, it is hereby

ORDERED, ADJUDGED, AND DE-CREED that, for the foregoing reasons, the defendant's motion to this court for reconsideration of its January 30, 1986, judgment be, and it is hereby, denied.